Stuart H. Schultz, #02886
STRONG & HANNI
102 South 200 East, Suite 800
Salt Lake City, UT 84111
Telephone:  (801) 532-7080
Facsimile:   (801) 596-1508
sschultz@strongandhanni.com
*Attorneys for Defendant Mary Street*

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| KATE GRANT AND KARMANN KASTEN, LLC,<br><br>                  Plaintiff,<br><br>v.<br><br>KEVIN LONG; MILLCREEK COMMERCIAL PROPERTIES, LLC; COLLIERS INTERNATIONAL; BRENT SMITH; SPENCER TAYLOR; BLAKE MCDOUGAL; and MARY STREET,<br><br>               Defendants. | **DEFENDANT MARY STREET'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No.: 2:23-cv-00936-AMA-CMR<br><br>District Judge Anne Marie McIff Allen<br><br>Magistrate Judge Cecilia M. Romero |

Pursuant to DUCivR 7-1 and 56-1, and Rule 56, Fed. R. Civ. P., Defendant Mary Street moves the Court for summary judgment and dismissal with prejudice of all claims alleged against her in Plaintiffs' First Amended Complaint (hereinafter "FAC").

## **TABLE OF CONTENTS**

INTRODUCTION ......................................................................................................... 4

RELIEF REQUESTED ................................................................................................. 6

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................ 6

1.    Plaintiffs purchased a TIC interest from Millrock through Millcreek .............................. 6

2.    The FAC's causes of action are grounded on the alleged fraudulent sale of the TIC interest .................................................................................................................................. 7

3.    Mary Street was not involved in the sale of the TIC interest and made no representations of fact relating thereto to Plaintiffs before their purchase closed. ............................................ 10

4.    Mary Street did not receive any of the sale proceeds paid by Plaintiffs .......................... 12

5.    Mary Street's sole role, through her company, CAMS Realty, is as the Lease Administrator of the Naperville Property .................................................................................. 13

6.    Mary Street and CAMS did not determine the Tenants for the Naperville Property. ...... 14

7.    Mary saw no bond/insurance documents until after ACM defaulted. .............................. 15

ARGUMENT ............................................................................................................... 15

8.    No claims are asserted against Mary Street in the Third, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Causes of Action. .................................................................................... 15

9.    The requisite elements of the First Cause of Action for securities fraud under Section 10(b) and Rule 10b-5 cannot be met against Ms. Street. ......................................................... 18

10.   There is no merit to the Second Cause of Action for Sale of Unregistered Securities. ..... 19

11.   There is no merit to the Fourth and Fifth Causes of Action for State Securities Claims .. 20

12.   The Twelfth Cause of Action for Unjust Enrichment is without merit. ........................... 22

CONCLUSION ............................................................................................................. 22

# **TABLE OF AUTHORITIES**

Cases                                                                                                    Page(s)

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804, 131 S.Ct. 2179, 180 L.Ed.2d 24 (2011) ........................................................ 18

*Hogan v. Pilgrim's Pride Corp.*,
   73 F.4th 1150 (10th Cir. 2023) ................................................................................................. 18

*S.E.C. v. Autocorp Equities, Inc.*,
   292 F.Supp.2d 1310 (D. Utah 2003) ....................................................................................... 19

*SEC v. Levin*,
   849 F.3d 995 (11th Cir. 2017) ................................................................................................. 19

*Securities and Exchange Commission v. GenAudio Inc.*,
   32 F.4th 902 (10th Cir. 2022) ................................................................................................... 19

*TDC Lending LLC v. Private Capital Group, Inc.*,
   340 F.Supp.3d 1218 (D. Utah 2018) ................................................................................. 18, 19

*TruGreen Companies, L.L.C., v. Mower Bros. Inc.*,
   2008 UT 81 .............................................................................................................................. 22

Statutes

15 U.S.C. § 77b(a)(1) .................................................................................................................. 19
15 U.S.C. § 77e(a) and (c) .......................................................................................................... 19

## **INTRODUCTION**

On or about March 4, 2021, Plaintiff Kate Grant, through her limited liability company, Plaintiff Karmen Kasten, LLC (hereinafter collectively referred to as "Plaintiffs"), purchased a 3.0241% interest as a tenant in common in commercial property located in Naperville, Illinois ("Naperville Property") from Millrock Investment Fund 1, LLC (hereinafter "Millrock") for $153,570.03 as part of an IRC § 1031 exchange.[1] Plaintiffs used a qualified intermediary named Investment Property Exchange Services, Inc. ("IPX") to effectuate the 1031 exchange,[2] and Plaintiffs were also represented by their real estate agent, Chuck Roosevelt, and real estate broker, A Better Way Realty LLC, in the purchase.[3] The purchase is referred to in the FAC as a Tenant in Common ("TIC") interest.

Defendant Millcreek Commercial Properties LLC (hereinafter "Millcreek"), as the agent of Millrock, marketed and sold the TIC interest to Plaintiffs.[4] Multiple other persons purchased percentage TIC interests in and became co-tenant in common owners of the Naperville Property. Advanced Care Medical (hereinafter "ACM") rented the Naperville Property from the TIC owners and operated an urgent care medical facility in a building located on the Naperville Property.[5]

As 3.0241% TIC owners, Plaintiffs received 3.0241% of the rent paid each month by ACM. The other TIC owners also received rent paid by ACM equal to their respective percentage ownership interests. ACM eventually defaulted and, as a result, the rent payments stopped.

---

[1] Exhibit 1 hereto – Warranty Deed.
[2] Exhibit 2 hereto – 1031 Exchange documentation.
[3] *See* Exhibit 3 hereto – 3/3/2021 Estimated Settlement Statement.
[4] Exhibit 4 hereto – ACM Marketing Materials.
[5] Exhibit 4 hereto – ACM Marketing Materials.

-4-

Plaintiffs now claim that their purchase of the TIC interest was the unlawful sale of a security in violation of Federal and State securities laws and was induced by fraudulent misrepresentations allegedly made by various Defendants and non-parties, but not by Mary Street.[6]

The FAC asserts twelve causes of action, the underlying foundation for all of which is that the promotion, marketing and sale of the TIC interest to Plaintiffs was a result of misrepresentations or material omissions of facts such that Plaintiffs were fraudulently induced into the purchase. Included in their claims are alleged violations of Federal and State Securities laws, common law fraud, common law negligent misrepresentation, fraudulent inducement, conspiracy to engage in tortious conduct and to aid and abet in the same, and unjust enrichment all in connection with and arising from the promotion and sale of the TIC interests.

Mary Street moves for summary judgment because she had no involvement in the marketing, advertising, promotion or sale of the TIC interest to Plaintiffs. Plaintiffs admit in their answers to written discovery that Ms. Street made **no representations of material fact** regarding the Plaintiffs' purchase of their TIC interest before the purchase was closed.[7] Plaintiffs' purchase was fully concluded before they had any communications with Ms. Street, and, as such, they cannot sustain any claim that they were fraudulently misled into the purchase by Mary Street.

Mary's company, CAMS Realty, LLC (hereinafter "CAMS"), serves as the Lease Administrator of the Naperville Property for the Plaintiffs and the other TIC owners, but that relationship began only *after* Plaintiffs closed their purchase.[8] CAMS' role as Lease Administrator

---

[6] *See e.g.,* Doc. 58 – FAC at ¶¶ 21, 46, 142, and 232.a.
[7] Exhibit 5 hereto – Plaintiffs' Response to Mary Street's Request for Admission No. 1.
[8] Exhibit 6 hereto – 3/17/2021 email Street to Grant; Exhibit 7 hereto – Lease Administration Agreement between CAMS and Plaintiffs.

includes, among other things, collecting rent, distributing it to the TIC owners, paying property expenses, monitoring the lessee's performance of the lease, retaining counsel with the owners' permission in case of default by the lessee, and communicating information to the TIC owners.[9]

Mary and CAMS were not involved in finding or obtaining ACM as the original tenant in the Naperville Property,[10] or in assisting to obtain the second potential tenant, Neuragenix.[11] And Mary has never assisted Millcreek or Millrock in the purchase or sale of property as a real estate agent or broker.[12]

## RELIEF REQUESTED

Mary Street moves this Court for summary judgment dismissing all claims against her. All Plaintiffs' claims are based upon and arise either directly or indirectly out of Plaintiffs' allegations that they were defrauded and/or otherwise misled by false representations in the marketing, advertising, and/or promotional materials into purchasing their TIC Interest. Since the undisputed material facts show that Ms. Street was not involved in any way with the marketing, promotion or sale of the TIC interest to Plaintiffs and made no representations about the TIC interests before Plaintiffs closed their purchase, there is no legal or factual basis for liability against Ms. Street.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### Plaintiffs purchased a TIC interest from Millrock through Millcreek

1. On or about March 4, 2021, Plaintiffs purchased a 3.0241% ownership interest in commercial property located in Naperville, Illinois – the Naperville Property – from Millrock for

---

[9] *See, e.g.*, Exhibit 8 hereto – Street Depo. 16:5-17:1, 40:7-24, 54:6-11.
[10] Exhibit 8 hereto – Street Depo. 18:20-25.
[11] Exhibit 8 hereto – Street Depo. 19:4-6.
[12] Exhibit 8 hereto – Street Depo. 32:8-20.

$153,570.03 as part of an IRC § 1031 exchange.[13]

2.   The interest purchased by Plaintiffs is called a Tenant in Common (TIC) interest.[14]

3.   Defendant Millcreek, as the agent of Millrock, marketed and sold the TIC interest to Plaintiffs.[15]

4.   Several other persons and entities also purchased TIC interests in, and they were jointly the owners of, the Naperville Property.[16]

5.   A building located on the Naperville Property housed an urgent care medical facility that the TIC owners as landlord/owners leased to ACM.[17]

6.   As 3.0241% TIC owners, Plaintiffs received 3.0241% of the rent paid each month by ACM.[18]

7.   ACM initially performed its obligations as the tenant, but eventually defaulted on the Naperville Property lease.[19]

**<u>The FAC's causes of action are grounded on the alleged fraudulent sale of the TIC interest</u>**

8.   Plaintiffs claim that their purchase was the unlawful sale of a security in violation of Federal and State securities laws and was induced by fraudulent misrepresentations allegedly

---

[13] Exhibit 1 hereto – Warranty Deed at MILLCREEK-GRANT000055-57 and Exhibit 3 hereto – 3/3/2021 Estimated Settlement Statement.
[14] Exhibit 4 hereto – ACM Marketing Materials at DEF 000302.
[15] Exhibit 4 hereto – ACM Marketing Materials at DEF 000302.
[16] *See* Exhibit 10 hereto – TIC Agreement.
[17] Exhibit 4 hereto – ACM Marketing Materials at DEF 000304.
[18] *See* Exhibit 7 hereto – Lease Administration Agreement, ¶ 2 at DEF 000001 (stating that the Lease "Administrator shall . . . collect rents and distribute proportionate net proceeds to owners . . ..")
[19] *See* Exhibit 8 hereto – Street Depo. 21:7-12, 41:3-6.

made by (i) Defendants Millcreek, Colliers, Long, Taylor, McDougal (identified collectively in the FAC as the Millcreek/Colliers Parties"); (ii) non-parties HSH, HSMG, Constantin, and Smith (identified collectively in the FAC as the "HSH Parties"); and (iii) non-parties ADP, Butera, SARC USA, Inc., and Caton (identified collectively in the FAC as the "Developer Parties").[20]

9.  The FAC's First Cause of Action alleges violations of Section 10(b) and Rule 10b-5 under the SEC Act in that "material misrepresentations and omissions were made in connection with the offer to sell a security."[21]

10. The Second Cause of Action alleges "Sale of Unregistered Securities".[22]

11. The Third Cause of Action alleges Control Person Liability under the SEC Act. This cause of action is not asserted against Mary Street.[23]

12. The Fourth Cause of Action alleges State Law Securities Fraud by, among other things, making "untrue statements of material fact" . . . "[i]n connection with the Defendants' sale and the Plaintiffs' purchase of investments in the Naperville Property[.]"[24]

13. The Fifth Cause of Action alleges State Law Securities Violation/Sale by Unlicensed Broker or Investment Adviser and asserts that Defendants Long, Rutherford, Bell, Huff, McDougal, Taylor, and Weber, **not Mary Street**, "functioned as securities agents in selling the investment in Millcreek TIC Properties to the Plaintiffs."[25]

14. The Sixth Cause of Action alleges Materially Aiding State-Law Securities Fraud. This

---

[20] Doc. 58 – FAC at ¶¶ 21, 46, 142, and 232.a.
[21] Doc. No. 58 – FAC at ¶ 283.
[22] Doc. No. 58 – FAC at 43-44, ¶¶ 293-299.
[23] Doc. No. 58 – FAC at Page 44 of 64.
[24] Doc. No. 58 – FAC at ¶ 315.
[25] Doc. No. 58 – FAC at ¶ 323.

cause of action is not asserted against Mary Street.[26]

15. The Seventh Cause of Action for Common Law Fraud asserts that Defendants Long, Rutherford, Bell, Huff, McDougal, Taylor, and Weber, but *not Mary Street*, "made false statements about vital facts regarding the Naperville Property, including the representations within the Marketing Materials and the representations made to the Plaintiffs[,]" and that "Plaintiffs reasonably relied on the statements *by investing* in the Naperville Property."[27]

16. The Eighth Cause of Action for Negligent Misrepresentation alleges that misrepresentations were made "to induce Plaintiffs into *purchasing* the Naperville Property for a grossly inflated price."[28]

17. The Ninth Cause of Action alleges Breach of Fiduciary Duty with respect to "affirmatively invit[ing] and encourag[ing] Plaintiffs to rely on their judgment and skill regarding their TIC *investment* in the Naperville Property."[29]

18. The Tenth Cause of Action alleges Conspiracy to Engage in Tortious Conduct by the Millcreek/Colliers Parties, the HSH Parties, and the Developer Parties, but *not Mary Street*, by "fraudulently *inducing Plaintiffs' investment* in the Naperville Property."[30]

19. The Eleventh Cause of Action alleges Aiding and Abetting Tortious Conduct against the Millcreek/Colliers Parties, the HSH Parties, and the Developer Parties, but *not against Mary Street*.[31]

---

[26] Doc. No. 58 – FAC at Page 49 of 64.
[27] Doc. 58 – FAC at ¶¶ 337, 341(emphasis added).
[28] Doc. 58 – FAC at ¶ 351 (emphasis added).
[29] Doc. 58 – FAC at ¶ 358 (emphasis added).
[30] Doc. 58 – FAC at ¶ 371 (emphasis added).
[31] Doc. 58 – FAC at ¶¶ 377-385.

20. The Twelfth Cause of Action alleges Unjust Enrichment based, among other things, on receipt of money "from the proceeds of the ***Plaintiffs' TIC investment*** . . .."[32]

**<u>Mary Street was not involved in the sale of the TIC interest and made no representations of fact relating thereto to Plaintiffs before their purchase closed.</u>**

21. Mary was asked about Millcreek's sales model for the TIC interests in her deposition and testified as follows:

> Q.  . . . How is Millcreek's sales model, I guess, different than just a few owners owning together?
>
> [Objections omitted]
>
> THE WITNESS:   Okay. So I'll explain what I understand, but I don't – ***I don't sell the TIC properties and I haven't been involved in the marketing,*** so everything I'm going to say is based on what I've observed, right? Or what I've learned.[33]
>
> . . .
>
> A.  . . . ***I'm not part of the sales and marketing team***. Okay? And I'm – I don't meet the owners of the Naperville property until after they've purchased the Naperville property.[34]
>
> . . .
>
> Q.  Okay. And you were never involved in putting anything like the purchase and sale agreement together for purchasers of the tenant-in-common investment?
>
> A.   Correct. I do not participate in the sale, and I don't write the contracts. This is not something that I would do.[35]

---

[32] Doc. 58 – FAC at ¶ 388 (emphasis added).
[33] Exhibit 8 hereto – Street Depo. 34:10-20 (emphasis added).
[34] Exhibit 8 hereto – Street Depo. 48:8-11 (emphasis added).
[35] Exhibit 8 hereto – Street Depo. 51:18-24.

22. Mary does not know how the purchase price or the cap rate shown in Millcreek's marketing flyer for the Naperville Property were determined.[36] She was not involved at all with the calculation of the purchase price listed on the marketing materials for Neuragenix either, stating "No. I'm never involved in anything that has anything to do with the marketing or the sales or the development of those things."[37]

23. On December 11, 2024 Plaintiffs served the following responses to Mary Street's written discovery:

> **REQUEST NO. 1:** Admit that Mary Street did not make any representations of material fact to Plaintiffs regarding the Naperville, Illinois Tenant in Common ("Naperville TIC") interest purchased by Kate Grant through her LLC Karmen Kasten, LLC, before the purchase was closed.

> **RESPONSE: *Admit.*** Plaintiffs admit that Mary Street was not directly involved in the initial marketing of the Naperville TIC. Plaintiffs admit that the earliest communication between Mary Street and Plaintiffs is dated March 17, 2021, and marked as Bates nos. DEF 001658 – DEF 001659.

> . . .

> **INTERROGATORY NO. 1:** If Plaintiffs denied Request for Admission 1, state every representation of material fact that Mary Street made to Plaintiffs regarding the Naperville TIC interest before the Plaintiffs' purchase of the Naperville TIC interest was closed.

> **ANSWER:** See Plaintiffs' response to Request for Admission No. 1.

> **INTERROGATORY NO. 2:** State the date Plaintiffs first had any communication, verbal or written, with Mary Street.

---

[36] Exhibit 8 hereto – Street Depo. 114:6-17.
[37] Exhibit 8 hereto – Street Depo. 115:12-17; see also Exhibit 9 hereto – NGX Marketing Flyer.

**ANSWER:** See Plaintiffs' response to Request for Admission No. 1.[38]

24. The first communication from Mary Street to Plaintiffs identified in Plaintiffs'

Response to Request for Admission No. 1 as DEF 001658 -1659 is an email dated March 17, 2021

from Ms. Street to Kate Grant. Ms. Street stated:

> **Good afternoon Ms. Grant – please confirm receipt. I need your response to process rent disbursement.**
>
> I am the Lease Administrator for the investment property you recently acquired through Millcreek Commercial. I collect rent from the tenant and disburse the proportionate share to each of the property's owners each month. In order to get you set up to receive rent payments, I need to collect some information from you. I have attached the Lease Administration Agreement, Direct Deposit Form and W9 for your review. Please confirm receipt of this message and let me know if you have any questions. The attached documents have been sent to you through DocuSign for electronic signature.
>
> <u>ACM Naperville</u>
> Buyer: Kate Grant/Karmann Kasten, LLC
> Close Date: March 4, 2021
> Percentage: 3.0241%
>
> Sincerely,
>
> Mary Street
> Manager, CAMS Realty
>
> A Division of Mountain West Commercial Real Estate[39]

**<u>Mary Street did not receive any of the sale proceeds paid by Plaintiffs</u>.**

25. The Estimated Settlement Statement for Plaintiffs' purchase of their TIC interest shows

---

[38] Exhibit 5 hereto – Plaintiffs' 12/11/2024 Responses to Street's written discovery (emphasis added).
[39] Exhibit 6 hereto – 3/17/2021 email Street to Grant.

to whom the proceeds were disbursed.[40]

26. No part of the sales proceeds was received by Mary or CAMS.[41]

**Mary Street's sole role, through her company, CAMS Realty, is as the Lease Administrator of the Naperville Property.**

27. Mary's company, CAMS, serves as the Lease Administrator of the Naperville Property for the Plaintiffs and the other TIC owners, but that relationship only began *after* Plaintiffs closed their purchase.[42]

28. CAMS' role as Lease Administrator includes, among other things, collecting rent and distributing it to the TIC owners,[43] paying property expenses, monitoring the lessee's performance of the lease, retaining counsel with the owners' permission in case of default by the lessee,[44] and communicating information to the TIC owners.[45]

29. Mary and CAMS' responsibilities are limited to the lease administration-related duties.[46] CAMS' compensation is spelled out in the Lease Administration Agreement with the TIC Owners as 1.75 percent of gross rents.[47]

30. The TIC owners in the Naperville Property signed a Tenancy in Common Agreement, part of which provides that if an owner decides to sell their TIC interest, it must first be offered to

---

[40] Exhibit 3 hereto – 3/3/2021 Estimated Settlement Statement.
[41] Exhibit 3 hereto – 3/3/2021 Estimated Settlement Statement.
[42] Exhibit 6 hereto – 3/17/2021 email Street to Grant; Exhibit 7 hereto – Lease Administration Agreement between CAMS and Plaintiffs; Exhibit 5 hereto – Plaintiffs' 12/11/2024 Responses to Street's written discovery. *See also* Fact 21, above, Street Depo. 48:8-11.
[43] Exhibit 8 hereto – Street Depo. 54:6-11.
[44] Exhibit 8 hereto – Street Depo. 72:21-73:25.
[45] *See, e.g.*, Exhibit 8 hereto – Street Depo. 16:5-17:1, 40:7-24, 54:6-11.
[46] *See* Exhibit 8 hereto – Street Depo. 142:12-14, 17.
[47] Exhibit 8 hereto – Street Depo. 62:14-20.

the other TIC owners (right of first refusal).[48]

31. No Naperville TIC owner has successfully sold their share to another Naperville TIC Owner or to a third party.[49]

32. Mary does not know if any Naperville TIC owner has attempted to sell their TIC interest to a third party.[50]

33. Mary is a licensed real estate agent at Mountain West Commercial Real Estate,[51] but she has never assisted Millcreek or Millrock in the purchase or sale of property as a real estate agent or broker.[52]

34. Neither Mary nor CAMS ever sold or marketed any interest in real estate of any kind in the state of Illinois.[53]

**Mary Street and CAMS did not determine the Tenants for the Naperville Property.**

35. Mary and CAMS were not involved in finding or obtaining ACM as the original tenant in the Naperville Property.[54]

36. Mary and CAMS were also not involved in negotiating the lease with ACM and "knew nothing about them at all until after a lease had already been signed."[55]

37. Mary and CAMS were not involved and did not assist in finding the second potential

---

[48] Exhibit 10 hereto – TIC Agreement, ¶ 8, at DEF 000282-000283.
[49] Exhibit 8 hereto – Street Depo. 123:21-124:3.
[50] Exhibit 8 hereto – Street Depo. 124:4-9.
[51] Exhibit 11 hereto – Mary Street's Response to Interrogatory No. 8 of Plaintiff's Second Set of Discovery Requests.
[52] Exhibit 8 hereto – Street Depo. 32:8-20;
[53] Exhibit 8 hereto – Street Depo. 165:21-24.
[54] Exhibit 8 hereto – Street Depo. 18:20-25, 70:25-71:8.
[55] Exhibit 8 hereto – Street Depo. 71:19-24.

tenant, Neuragenix, after ACM defaulted, or doing due diligence with respect to Neuragenix.[56]

38. Mary was not involved in any negotiations with ACM or Neuragenix regarding the rent rate or the process that was used to determine rent for the Naperville Property.[57]

**Mary saw no bond/insurance documents until after ACM defaulted.**

39. The marketing flyer stated there was a corporate guarantee for ACM's rent obligation which was insured by Lloyd's of London. Mary saw no such insurance document until after ACM defaulted. The insurance bond she was provided after the default was from Talisman, not Lloyd's of London.[58]

## ARGUMENT

**Summary Judgment is appropriate here because Mary Street did not promote, market or sell the TIC interest to Plaintiffs, and Plaintiffs did not rely on any representation from Mary Street in their decision to purchase the TIC interest.**

1. **No claims are asserted against Mary Street in the Third, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Causes of Action.**

The Court may grant summary judgment as to the Third, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Causes of Action because they do not assert any cognizable claims against Ms. Street. Specifically:

- The Third Cause of Action for Control Person Liability is only alleged against Long, Rutherford, Bell, Huff, McDougal, Taylor and Weber;[59]

- The Sixth Cause of Action for Materially Aiding State Law Securities Fraud is only alleged

---

[56] Exhibit 8 hereto – Street Depo. 19:4-6, 90:8-12, 91:5-24.
[57] Exhibit 8 hereto – Street Depo. 104:19-24.
[58] Exhibit 8 hereto – Street Depo. 114:18-115:6.
[59] Doc. No. 58 – FAC at Page 44 of 64.

against Long, Rutherford, Bell, McDougal, Taylor, and Weber;[60]

- The Eighth Cause of Action alleges Negligent Misrepresentation regarding disclosure of the condition of the Naperville Property, viability of the investment, and legitimacy of the tenant and corporate guarantor.[61] Plaintiffs claim that this information was misrepresented "to induce Plaintiffs into purchasing the Naperville Property for a grossly inflated price.[62] These assertions clearly have no basis in fact with respect to Mary Street as the undisputed facts show she made no representations and had no communications with Plaintiffs until after they had closed their purchase.[63]

- The Ninth Cause of Action alleges breach of fiduciary duty, but asserts nothing specific against Mary Street. Instead, Plaintiffs begin by asserting that "Defendants . . . held themselves out as having superior skill . . . concerning all aspects of the transactions by which Plaintiffs invested in the Naperville Property."[64] But the undisputed facts show Ms. Street was not involved with Plaintiffs until after they had made their investment and closed their purchase.[65] Thus, the Ninth Cause of Action does not establish a claim against her.

- The Tenth Cause of Action for Conspiracy to Engage in Tortious Conduct, while purporting to be alleged against "All Defendants[,]"[66] in fact only alleges that "the Millcreek/Colliers Parties entered a combination with the HSH Parties and Developer Parties to

---

[60] Doc. No. 58 – FAC at Page 49 of 64.
[61] Doc. No. 58 – FAC, ¶ 345.
[62] Doc. No. 58 – FAC, ¶ 351.
[63] Exhibit 5 hereto – Plaintiffs' 12/11/2024 Responses to Street's written discovery.
[64] Doc. No. 58 – FAC, ¶ 357.
[65] Exhibit 5 hereto – Plaintiffs' 12/11/2024 Responses to Street's written discovery (emphasis added).
[66] Doc. No. 58 – FAC at Page 53 of 64.

accomplish the object of the tortious behavior, namely ***fraudulently inducing Plaintiffs' investment*** in the Naperville Property[,]"[67] conduct in which Plaintiffs admit Mary Street was not involved;[68]

- The Eleventh Cause of Action for Aiding and Abetting Tortious Conduct, while purporting to be alleged against "All Defendants[,]"[69] in fact limits its allegations to "certain Defendants" and does not include Mary Street among those.[70]

- Although the Seventh Cause of Action alleges Common Law Fraud "Against All Defendants[,]"[71] it is grounded upon allegations that Long, Rutherford, Bell, Huff, McDougal, Taylor and Weber "made false statements about vital facts regarding the Naperville Property, including the representations in the Marketing Materials and the representations made to the Plaintiffs[,]" upon which Plaintiffs allegedly "reasonably relied . . . by investing in the Naperville Property[,]" and thereby "have suffered damages . . .."[72] Regardless of the non-specific reference to Ms. Street,[73] Plaintiffs admit that Mary Street made no representations regarding the TIC interests before the sale was closed, and, as such, the Seventh Cause of Action is without merit to her.[74]

---

[67] Doc. No. 58 – FAC at Pages 53-54 of 64, ¶ 371.
[68] Exhibit 5 hereto – Plaintiffs' 12/11/2024 Responses to Street's written discovery (emphasis added).
[69] Doc. No. 58 – FAC at Page 54 of 64.
[70] Doc. No. 58 – FAC at Pages 54-56 of 64, ¶¶ 378-384.
[71] Doc. No. 58 – FAC at Page 50 of 64.
[72] Doc. No. 58 – FAC at Pages 50-51 of 64, ¶¶ 337, 341-342.
[73] Doc. No. 58 – FAC at Page 50 of 64, ¶ 337 (alleging that "Mary Street continued communicating with owners regarding the representations made to the Plaintiffs, which contained false statements or omissions.")
[74] Exhibit 5 hereto – Plaintiffs' 12/11/2024 Responses to Street's written discovery (emphasis added).

2. __The requisite elements of the First Cause of Action for securities fraud under Section 10(b) and Rule 10b-5 cannot be met against Ms. Street.__

"The elements of a private securities fraud claim based on violations of §10(b) and Rule 10b-5 are: (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."[75]

> A plaintiff claiming a violation of Section 10(b) must further allege the defendant acted with scienter, which the Tenth Circuit defines as "intent to defraud or recklessness." Recklessness is "conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it."[76]

Based on Plaintiffs' admission that Ms. Street made no material representation of any fact before Plaintiffs closed the purchase of their TIC interest and that the first communication between Ms. Street and Plaintiffs was the March 17, 2021 email introducing Mary and CAMS as the Lease Administrator,[77] the elements of a Section 10(b) or Rule 10b-5 cause of action, as set forth above, are plainly not met. The undisputed facts show that Mary Street did not make a material misrepresentation or omission connected to the purchase by, or the sale to, Plaintiffs of a security,

---

[75] *Hogan v. Pilgrim's Pride Corp.*, 73 F.4th 1150, 1153 (10th Cir. 2023) (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809-10, 131 S.Ct. 2179, 180 L.Ed.2d 24 (2011).)

[76] *TDC Lending LLC v. Private Capital Group, Inc.*, 340 F.Supp.3d 1218, 1224 (D. Utah 2018).

[77] Exhibit 5 hereto – Plaintiffs' 12/11/2024 Responses to Street's written discovery (emphasis added).

and Plaintiffs did not rely upon any representation or alleged omission by Mary Street with respect to the same.

Further, neither the FAC nor the discovery admissions "specify each statement alleged to have been misleading as well as the reason or reasons why the statement is misleading" as required under the Private Securities Litigation Reform Act (PSLRA).[78]

    3.   <u>There is no merit to the Second Cause of Action for Sale of Unregistered Securities.</u>

Plaintiffs' Second Cause of Action for sale of unregistered securities asserts that Plaintiffs' purchase of the TIC interest in the Naperville Property was an investment in a security as defined under 15 U.S.C. § 77b(a)(1),[79] that the TIC interests were not registered as securities and were not exempt from registration, and that the Millcreek/Colliers Parties marketed the TIC interests by means of interstate commerce "in violation of ***Sections 5(a) and 5(c)*** of the Securities Act (15 U.S.C. § 77e(a) and (c))."[80]

> In general, Section 5 makes it unlawful to sell unregistered securities. The elements of a Section 5 claim are "(1) lack of a registration statement as to the subject securities; (2) ***the offer or sale of securities***; and (3) the use of interstate transportation or communication and the mails in connection with ***the offer or sale***."[81]

The Tenth Circuit has explained:

> To make a prima facie case under §§ 5(a) and (c), the following elements must be shown: "(1) no registration statement was in effect as to the securities, (2) the ***defendant sold or offered to sell these securities***, and (3) interstate transportation or communication and

---

[78] *TDC Lending LLC v. Private Capital Group, Inc.*, 340 F.Supp.3d 1218, 1224 (D. Utah 2018) (internal quotation marks omitted)

[79] Doc. No. 58 – FAC, ¶ 294.

[80] Doc. No. 58 – FAC, ¶¶ 294-296 (emphasis added).

[81] *S.E.C. v. Autocorp Equities, Inc.*, 292 F.Supp.2d 1310, 1327 (D. Utah 2003) (emphasis added).

the mails were used in connection with ***the sale or offer of sale***."[82]

Given the foregoing elements, and regardless of whether Plaintiffs' 3.0241% TIC interest in the Naperville Property is a security, Plaintiffs cannot make a prima facie case on their Second Cause of Action because it is undisputed that Mary Street did not offer or sell the TIC interest to Plaintiffs.

### 4. There is no merit to the Fourth and Fifth Causes of Action for State Securities Claims.

Plaintiffs allege in their Fourth and Fifth Causes of Action that their TIC interest in the Naperville Property "is [or are] within the securities definition under ***applicable state law provisions***."[83] However, they do not identify anything specific to support this claim, except to say in footnote 3: Applicable state laws regarding securities fraud include at least the following statutes: Illinois, 815 ILCS 5/12; Utah Code § 61-1-1; Colo. Rev. Stat. Ann. § 11-51-501.[84] Plaintiffs fail to identify any specific part in the above statutes which Mary Street allegedly violated.

But assuming the FAC's allegations are intended to cover this, then in the Fourth Cause of Action, Plaintiffs assert that Defendants made untrue statements of fact or omitted to state necessary material facts "[i]n connection with the Defendants' sale and the Plaintiffs' purchase of investments in the Naperville Property[.]"[85] This cannot apply to Mary Street because Plaintiffs admit she had no communications with them until ***after*** Plaintiffs had closed their purchase of the

---

[82] *Securities and Exchange Commission v. GenAudio Inc.*, 32 F.4th 902, 939 (10th Cir. 2022) (quoting *SEC v. Levin*, 849 F.3d 995, 1001 (11th Cir. 2017)) (emphasis added.)
[83] Doc. No. 58 – FAC, ¶¶ 313, 322 (emphasis added).
[84] Doc. No. 58 – FAC, ¶ 314, n. 3 at Page 46 of 64.
[85] Doc. No. 58 – FAC, ¶ 315.

TIC interest.[86]

Plaintiffs nonetheless attempt to bring Ms. Street into the Fourth Cause of Action by claiming she "omitted material facts regarding her licensure to act as a broker in Illinois, the alleged bond with Lloyds of London, and the value of the property."[87] But none of these allegations are supported by facts. In the first instance, Mary made no representations regarding the value of the Naperville Property and did not know how the value was calculated.[88] That information was contained in the marketing materials provided by other Defendants.[89] Next, neither Mary nor CAMS ever sold any real estate in the state of Illinois.[90] Finally, Mary first learned about the bond guaranteeing rent payments after ACM defaulted.[91] So she could not have represented ot omitted to represent anything about the bond with respect to Plaintiffs' decision to purchase a TIC interest.[92]

Plaintiffs' Fifth Cause of Action attempts to bring Ms. Street into the claim by asserting Plaintiffs "*believe*" that in her role as Lease Administrator, Mary "functioned as a securities agent by negotiating the sale of the property and assisting the owners in the sale of their property."[93] But Plaintiffs' belief is not a fact. The undisputed facts show that Mary did not sell the TIC interests

---

[86] Exhibit 5 hereto – Plaintiffs' 12/11/2024 Responses to Street's written discovery (emphasis added).
[87] Doc. No. 58 – FAC, ¶ 317.
[88] Exhibit 8 hereto – Street Depo. 114:6-17, 115:12-17.
[89] Exhibits 4 and 9 hereto – ACM Marketing Materials and NGX Marketing Flyer.
[90] Exhibit 8 hereto – Street Depo. 165:21-24.
[91] Exhibit 8 hereto – Street Depo. 114:18-115:6.
[92] The representation that there was a bond was made in marketing materials that Mary had nothing to do with. *See* Ex. 4 hereto – ACM Marketing Materials at DEF 000304.
[93] Doc. No. 58 – FAC, ¶ 323 (emphasis added).

to Plaintiffs,[94] and she has not assisted in selling Plaintiffs' TIC interest to someone else.[95]

### 5. The Twelfth Cause of Action for Unjust Enrichment is without merit.

Plaintiffs assert that they "conferred a benefit on the Defendants by making their investment in Millcreek TIC Properties."[96] Plaintiffs also allege that "Defendants each received a benefit from Plaintiffs in the form of commissions or other compensation paid from the proceeds of the sale transaction; access to and direct use of the identifiable proceeds of the investment; and perpetuation of the overall scheme." These assertions plainly do not apply to Mary Street. She/CAMS was compensated 1.75% of gross rent pursuant to the terms of the Lease Administration Agreement.[97] She received nothing from Plaintiffs' purchase payment for their TIC interest as shown by the Estimated Settlement Statement.[98]

In addition, Plaintiffs' relationship with Mary Street/CAMS is governed by a contract, the Lease Administration Agreement, which bars a claim for unjust enrichment because "restitution and unjust enrichment are remedies found in quantum meruit. . . . As tools of equity, *they are used only when no express contract is present*."[99] Thus, there is neither a factual nor a legal basis for an unjust enrichment claim against Mary Street.

### CONCLUSION

---

[94] Exhibit 5 hereto – Plaintiffs' 12/11/2024 Responses to Street's written discovery.
[95] *See* Exhibit 10 hereto – TIC Agreement, ¶ 8, at DEF 000282-000283; Exhibit 8 hereto – Street Depo. 123:21-124:3-9.
[96] Doc. No. 58 – FAC, ¶ 387.
[97] Exhibit 8 hereto – Street Depo. 62:14-20.
[98] Exhibit 3 hereto – 3/3/2021 Estimated Settlement Statement.
[99] *TruGreen Companies, L.L.C., v. Mower Bros. Inc.*, 2008 UT 81, ¶ 18 (emphasis added).

Based on the foregoing, Mary Street respectfully requests that the Court grant her motion and dismiss Plaintiff's Amended Complaint and all claims against her, with prejudice, and on the merits.

DATED this 27th day of February 2025.

STRONG & HANNI

/s/ Stuart H. Schultz

_____
Stuart H. Schultz
*Attorneys for Mary Street*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this Thursday, February 27, 2025, I caused the foregoing

**DEFENDANT MARY STREET'S MOTION FOR SUMMARY JUDGMENT was** served by

the method indicated below on the following:

| Stephen K. Christiansen | ( ) | U.S. Mail, Postage Prepaid |
| Randall S. Everett | ( ) | Hand Delivery |
| CHRISTIANSEN LAW, PLLC | ( ) | Overnight Mail |
| 311 South State Street, Ste. 250 | ( ) | E-mail |
| Salt Lake City, Utah 84111 | (X) | E-filing Notification |

steve@skclawfirm.com
randy@skclawfirm.com
*Attorneys for Plaintiffs*

| Bentley J. Tolk | ( ) | U.S. Mail, Postage Prepaid |
| Rodger Moore Burge | ( ) | Hand Delivery |
| Terry E. Welch | ( ) | Overnight Mail |
| PARR BROWN GEE & LOVELESS | ( ) | E-mail |
| 101 S 200 E STE 700 | (X) | E-filing Notification |
| Salt Lake City, UT 84111 | | |

btolk@parrbrown.com
rburge@parrbrown.com
twelch@parrbrown.com
Paralegal: cyancey@parrbrown.com
*Attorneys for Kevin Long*

| John E. Keiter | ( ) | U.S. Mail, Postage Prepaid |
| KEITER LAW, P.C. | ( ) | Hand Delivery |
| 50 W. Broadway Ste. 307 | ( ) | Overnight Mail |
| Salt Lake City, Utah 84111 | ( ) | E-mail |
| john@keiterlaw.com | (X) | E-filing Notification |

*Attorney for Brent Smith*

| Brian N. Platt | ( ) | U.S. Mail, Postage Prepaid |
| Chad E. Nydegger | ( ) | Hand Delivery |
| Ryan C. Morris | ( ) | Overnight Mail |

WORKMAN NYDEGGER                              ( )    E-mail
60 E. South Temple St., Ste 1000             (X)    E-filing Notification
Salt Lake City, Utah 84111
bplatt@wnlaw.com
cnydegger@wnlaw.com
rmorris@wnlaw.com
*Attorneys for Brent Smith*

Andrew V. Wright                             ( )    U.S. Mail, Postage Prepaid
David B. Nielson                            ( )    Hand Delivery
James D. Gilson                             ( )    Overnight Mail
DENTONS DURHAM JONES PINEGAR P.C.           ( )    E-mail
1557 W. Innovation Way, Suite 400           (X)    E-filing Notification
Lehi, Utah 84043
andy.wright@dentons.com
david.nielson@dentons.com
james.gilson@dentons.com
*Attorneys for Colliers International*

J. Ryan Mitchell                            ( )    U.S. Mail, Postage Prepaid
Christopher A. Langston                      ( )    Hand Delivery
Mika Hillery                                ( )    Overnight Mail
MITCHELL BARLOW & MASFIELD PC               ( )    E-mail
9 Exchange Pl Ste 600                       (X)    E-filing Notification
Salt Lake City, Utah 84111
rmitchell@mbmlawyers.com
clangstron@mbmlawyers.com
mhillery@mbmlawyers.com
*Attorneys for Blake McDougal*

Justin T. Toth                              ( )    U.S. Mail, Postage Prepaid
Maria E. Windham                            ( )    Hand Delivery
Nathan L. Jepson                            ( )    Overnight Mail
RAY QUINNEY & NEBEKER PC                     ( )    E-mail
36 S. State St. STE 1400                    (X)    E-filing Notification
PO Box 45385
Salt Lake City, Utah 84145
Jtoth@rqn.com
mwindham@rqn.com
njepson@rqn.com
*Attorneys for Spencer Taylor*

*/s/ Andi T. Sanchez*

-25-