# EXHIBIT 7

DocuSign Envelope ID: B8377810-2BA8-4F14-A557-0D468993C62B

LEASE ADMINISTRATION AGREEMENT

This Lease Administration Agreement (the "Agreement") is made as of this 16th day of March 2021, between **CAMS Realty, LLC (CAMS)**, as Lease Administrator ("Administrator") and those persons and entities executing a signature page to this Agreement, herein referred to as "Owner" or "Owners." This Agreement shall be governed by the terms and conditions of the Agreement and the Tenancy-in-Common Agreement defined below.

WHEREAS, Karmann Kasten, LLC **("Owner(s)")** as an Owner, has entered into a certain Tenancy-in-Common Agreement ("TIC Agreement") on a date even herewith, to acquire a percentage ownership interest in real property located at the common address of 2975 Showplace Drive, Naperville, IL 60564 (the "Property");

WHEREAS, other individuals and entities have also acquired a percentage ownership in the Property under a TIC Agreement;

WHEREAS, the Owners, in the TIC Agreement jointly agree to appoint an Administrator to manage the Property on each of their respective parts;

WHEREAS, other Owners have previously signed a Lease Administration Agreement;

WHEREAS, Owners and the Administrator have agreed that the Lease Administration Agreement should be amended as set forth herein;

WHEREAS, as an inducement to enter into this Agreement, the Administrator has agreed that all Owners should sign the Agreement and will use its best efforts to obtain the respective signatures of each Owner with a waiver of the sixty (60) day notice provision contained in Section 16 of the Lease Administration Agreement.

IN CONSIDERATION of the mutual covenants and agreements between the parties, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. Appointment. Owner appoints and designates Administrator to serve as Owner's exclusive representative for the Property. The Property is currently leased to Advance Care Medical By HSI

2. Administrator's Duties and Authority. Administrator shall, on behalf of Owner, have the power and responsibility, with respect to the Property, to collect rents and distribute proportionate net proceeds to owners , direct communication between owners and, if the need arises, and at the direction of the owners, to maintain, operate, enter into service and construction contracts, hire, supervise and terminate independent contractors to advise and assist administrator in performing said duties and pay expenses legal and accounting fees, record keeping, utilities, taxes, maintenance and repairs) and to perform all other activities necessary to accomplish such duties.

Administrator shall, on behalf of Owner, have the power and responsibility, with respect to the Property, to enforce the terms, conditions, and covenants made by the Owner as made in the TIC Agreement, as may be amended from time to time. Administrator shall prudently provide the services, duties and responsibilities in this Agreement with the highest degree of care, efficiency and fidelity.

Administrator agrees to work cooperatively with representatives of the majority owner, in regard to any tasks that should they arise beyond typical accounting and rent collection responsibilities, as requested by the majority owner.

3. Term. This Agreement shall commence as of the date of this Agreement and shall continue for the period of one (1) year or until December 31 of the year in which it is executed. This agreement will automatically renew on January 1 of the subsequent year unless terminated by owners as set forth below. Either Party may terminate this Agreement. The Administrator may terminate this Agreement by giving sixty (60) days written notice of termination to the Owners. Any termination by Owner must be approved by a vote of Owners who own more than 50 percent (50%) of the Ownership Percentages in the Property. Termination by Ownership may not take effect until Owners have unanimously chosen a successor. Once the successor Lease Administrator is chosen Notice may be served to the outgoing Lease Administrator. Termination shall take effect immediately upon notice to the Administrator.

DocuSign Envelope ID: B8377810-2BA8-4F14-A557-0D468993C62B

Upon termination, the rights, duties and obligations of the Administrator and Owners shall end except to the extent otherwise stated in this Agreement. All money owing to a party shall be paid in full.

4. Compensation of Administrator. The compensation to be paid to Administrator is found on **Exhibit A**.

5. Bank Accounts and Disbursements. Administrator, on behalf of Owners, shall establish and maintain a separate bank account specifically designated for receipts, payments and disbursements of funds solely related to the Property. Administrator shall keep and maintain all money received safe, secure and protected in an FDIC insured account in a depositor institution having net assets of one hundred million dollars or more (the "Operating Account."). Within five (5) days of receipt, the Administrator shall email a copy of the bank statement for the Operating Account to each Owner Administrator shall deposit all rentals and funds from the Property in the Operating Account promptly upon receipt. The Operating Account shall clearly indicate the custodial nature thereof. Administrator and its designated representatives may draw on the Operating Account to make disbursements to Owners and if the occasion arises utilize a property Administrator to make payments when due for utilities, services, supplies, maintenance, mortgage payments, repairs, insurance, legal fees, accounting fees, taxes, or other costs and expenses provided to or in connection with the management, operation, repair and maintenance of the Property, to discharge any liabilities or obligations of Owner incurred in connection with the Property, and to pay Administrator's fees and other compensation provided herein.

If the Operating Account contains insufficient funds to pay any obligations or liabilities incurred of the Property, Administrator shall promptly notify Owner. Owner shall then promptly deposit such funds as may be necessary to satisfy all such obligations and liabilities. Administrator shall not be obligated to extend its own funds for any of Owners obligations and shall have no liability in connection therewith.

6. Collection of Rents and Enforcement of Leases: Administrator shall take all reasonable actions to collect and enforce the collection of all rentals and other charges due Owner from tenants of the Property, in accordance with the terms of the applicable lease, as may be amended from time to time, and from other persons and entities on the Property having an obligation to Owner. Administrator shall provide Owners a copy of any notice or correspondence with a tenant of the Property simultaneous to making such communication. Administrator shall maintain at its principal office a record containing the name, percentage ownership and contact information for each Owner of the Property which shall be available for inspection and copying by all other Owners of the Property.

To enable Administrator to perform its duties under this Agreement, Administrator may take the following actions in the name of and on behalf of Owners, if such actions are necessary, in Administrator's reasonable judgment:

a. To collect rents and give receipts therefore;
b. To terminate tenancies in the Property and to execute and serve such appropriate notices in connection therewith;
c. To initiate and prosecute legal actions or suits on behalf of Owner with respect to any rentals or use of the Property;
d. To evict tenants and recover possession of those tenants' portion(s) of the Property;
e. To sue for rents and other sums due and owing and recover the same in the name of Owner;
f. To impose liens on tenants in the Property for sums due and owing, as allowed by the leases or by law;
g. To enforce any TIC Agreement then in effect;
h. To settle, compromise and release such actions or suits and reinstate such tenancies in connection with the Property as may be agreed by Owners; and
i. To perform all other activities necessary to accomplish its duties hereunder.

If the consents of any person or entity other than Owner (such as the beneficiary of a deed of trust encumbering the Property, are required for Administrator to perform its duties hereunder), Owner shall be solely responsible to obtain such consents; and Administrator shall have no obligation whatsoever with respect thereto, except as may otherwise be agreed in writing between Administrator and Owners. Notwithstanding Owner's obtaining of any such required additional consent(s), Administrator shall be deemed to have complied with the terms and provisions of this section with respect to such consents upon receiving Owner's approval to proceed with the subject activity.

DocuSign Envelope ID: B8377810-2BA8-4F14-A557-0D468993C62B

No legal proceedings other than those mentioned above shall be commenced without the prior consent of Owner. However, the Administrator shall notify each Owner of the intent to file any legal proceeding at least five (5) days prior to the filing of the action. All legal actions shall be through counsel designated by Administrator and approved by Owner, with all expenses for such legal proceeding and counsel to be Owner's sole responsibility.

7. Record Keeping. Administrator shall maintain adequate and separate books and records of all monies received and disbursed with respect to the Property. All financial statements and reports shall be prepared in accordance with generally accepted accounting principles on a modified cash basis, unless otherwise directed by Owner. Administrator shall maintain books and records at Administrator's address and shall be subject to Owner's inspection at any reasonable time.

8. Leasing. Administrator shall appoint a representative to represent Owner in all lease transactions and in performing due diligence to negotiate and consummate leases of the Property. In the event the Administrator chooses to utilize the services of an outside broker, Administrator shall consult with Millrock Investment Fund Management 1, LLC to determine a course of action which shall be in the best interest of the Owners, in the selection of the outside brokerage firm, and together direct and work with that broker in a team effort to achieve those goals. All reasonable and standard leasing, marketing, legal, and consulting costs shall be at Owner's expense, as approved by Owners Administrator shall take all commercially reasonable actions to qualify all prospective tenants.

Administrator has the express authority to sign on behalf of the Owners a new lease, the renewal or termination of an existing lease, but only after approval of the lease and tenant by a unanimous vote of Owners as set forth in the TIC agreement.

9. Property Sale or Exchange. Administrator shall represent Owner in all sale negotiations, subject to approval of all proposed and final terms and conditions of sale. Administrator may list the Property with a third-party broker. In the event the Property is listed through an outside broker, Administrator shall provide direction and shall work with that broker in a team effort to find a buyer for the Property. Administrator has the express authority to sign a listing agreement on behalf of the Owners, but only after approval by a vote of Owners who own more than fifty percent (50%) of the Ownership Percentages in the Property.

10. Indemnification.

a. Owner Indemnification: Each Owner, for its own actions, will indemnify and hold the Administrator and the Administrator's officers, shareholders, members, employees, representatives and agents (collectively "Administrator Indemnified Parties") harmless from and against any and all claims, demands, losses, lawsuits, proceedings, settlements, judgments, actions, causes of actions, damages and expenses incurred (including reasonable attorneys' fees and expenses) arising out of or related to any material breach by the Indemnifying Owner of the terms of this Agreement. Owners shall indemnify and hold harmless Administrator Indemnified Parties, from all claims, demands, liabilities, and causes of action incurred or assessed by Administrator in connection with the proper and lawful performance of Administrator's duties under this Agreement, except for Administrator's negligence, misfeasance or fraud.

b. Administrator Indemnification. Administrator agrees to indemnify, defend and hold the Owners harmless from any and all claims, causes of action, liabilities, liens, judgments and damages, including costs and attorney's fees, arising from or relating to: (i) Administrator's breach of this Agreement; (ii) Negligently performing or failing to perform Administrator's duties and obligations contained in this Agreement.

11. Arbitration. The parties hereto agree to submit to binding arbitration any controversy or claim arising out of or related to this Agreement, or any claimed breach of this Agreement. A single arbitrator pursuant to the commercial arbitration rules of the American Arbitration Association will conduct the arbitration then in effect, or such other arbitration service mutually agreed to by the affected parties. The arbitrator will conclude the arbitration and issue an award no later than 180 days following service of the demand for arbitration by either of the parties. Judgment upon the arbitrator's award may be entered in any court of competent jurisdiction. Arbitration shall take place in Salt Lake City, Utah.

12. Counterparts. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. It shall not be necessary in making proof of this Agreement to produce or account for more than one

counterpart. Each Owner shall be liable and responsible for its actions or failure to act except to the extent otherwise stated in this Agreement.

13. Insurance. During the term of this Agreement, Administrator shall maintain an errors and omissions insurance policy in the amount of $100,000 per occurrence, and $300,000 annual aggregate. The errors and omissions policy shall be obtained through a carrier admitted in each state where the Administrator is doing business and shall be A.M. Best FSR rated at least A-. The Administrator shall provide each Owner with a certificate of insurance for the error and omissions policy, which will include coverage for fraud.

14. Attorney Fees. Upon any breach or default of the terms or conditions hereof, the defaulting party shall pay all costs and expenses of enforcing this Agreement or any rights arising out of the breach or default of the provisions hereof, including reasonable attorney's fees, whether incurred with or without suit and both before and after judgment.

15. Amendments. This Agreement may be amended or modified by either party, but if by owners only after an affirmative vote of more than 50% of the ownership, such modifications shall take effect after a 60-day written notice.

16. Notices. Any notice, demand or document which any Party is required or may desire to give or deliver to any other Party, shall be in writing and may be personally delivered, or given or made by United States Registered or Certified Mail, email or fax, or delivered to a commercial expedited delivery service, freight prepaid, addressed to his, her or its last known address, is the responsibility of the Parties to notify the other as to a change in address. The Administrator's contact information, which may be changed from time to time by written notice to each Owner is:

CAMS Realty, LLC, Administrator (Commercial Asset Management Services) Address: 2015 W Grove Pkwy, Suite J, Pleasant Grove, UT 84062
Email: mstreet@mtnwest.com

17. Invalidity. The invalidity, illegality or enforceability of any one or more of the sections, subsections or portions of this Agreement shall not affect the validity, legality or enforceability of all other sections, subsections,or portions of thisAgreement.

18. Integration. This Agreement sets forth (and is intended to be an integration of) all the promises, agreements, conditions, understandings, warranties, and representations, oral or written, express or implied, between the Parties with respect to the subject matter of this Agreement; and there are no promises, agreements, conditions, understandings, warranties or representations, oral or written, express or implied, between the Parties with respect to the subject matter of and other than as set forth in thisAgreement.

19. Construction. This Agreement shall be interpreted and construed under the laws of the State of Utah without reference to its choice of law provisions.

20. Exclusive Jurisdiction. Each party to this Agreement agrees that the sole and exclusive jurisdiction for any cause of action arising under or related to this Agreement shall be a court located in Salt Lake City, Utah and each party hereby submits themselves to the jurisdiction of said court. Each party waives the defense of lack of personal jurisdiction and forum non convenience.

[SIGNATURE PAGE ATTACHED]

DocuSign Envelope ID: B8377810-2BA8-4F14-A557-0D468993C62B

MANAGER

DocuSigned by:

X Mary Street

By: Mary Street E0F9AD9C3F99452...

Its: Manager

CAMS Realty, LLC

A Utah Limited Liability Company

OWNER #1 Karmann Kasten, LLC

DocuSigned by:

X Kate Grant

By: Kate Grant F87DC94A7A9F4AE...

Its: Manager/Member

4/1/2021 | 10:17 AM MDT

OWNER #2

X______________________________

By:_____________________________

Its: ____________________________

DocuSign Envelope ID: B8377810-2BA8-4F14-A557-0D468993C62B

EXHIBIT A TO LEASE ADMINISTRATION AGREEMENT

Compensation of Administrator:

For its services and efforts under this Agreement, Administrator shall be compensated as follows:

a. CAMS shall be compensated a fee equal to 2.00% of gross rents deducted proportionately from each owner's rent disbursement.

b. Crisis/Default Rate. In the event the Tenant falls into default or rent is interrupted for any cause requiring action by the Lease Administrator the fee shall increase to 3.75% of scheduled Rents. CAMS must notify the owner prior to instigating this rate.

c. Sale or Leasing Commissions. In the event the Property is sold or it becomes necessary to obtain a new tenant or tenants, Owner agrees to pay Administrator or a third-party brokerage, a commission from the proceeds of a sale or for executed leases, based on normal and customary rates in the geographic area where the Property is located. All sales commissions shall be paid from closing, and in the case of leasing, from the Operating Account, within thirty (30) days after the date a lease is executed, renewed or extended (no compensation will be paid to Administrator or third-party brokers on lease renewals in force at the time Administrator was engaged as the Administrator) .

d. Construction. Administrator shall be paid $50 anhour:

(1) To retain a general contractor and monitor the general contractor's performance under a signed Agreement related to any reconstruction resulting from a casualty for which the landlord is either responsible or required to provide reconstructionundertheapplicableleaseagreementwiththethen currenttenantoftheProperty;

(2) To hire and monitor a contractor under a written contract for all other Improvements, maintenance, refurbishing or repair which is the responsibility of the landlord under the applicable lease agreement with the then current tenant of the Property;and

(3) To approve plans and specifications for tenant improvements proposed by the then current tenant ofthe Property, as allowed under the applicablelease.

e. Cost Reimbursement. Administrator shall be reimbursed out of the Operating Account for Administrator's direct costs associated with the management, operation, maintenance and repair of theProperty.

Initials:
DS
MS
Initials
DS
kG

# DIRECT DEPOSIT AUTHORIZATION FORM

***Fill in the boxes below and sign the form:***

First Name: Katherine
MI: D
Last Name: Grant

Social Security Number: [ ]-[ ]-[ ]

Phone Number: 303-335-8776

Company Name (If applicable): Karmann Kasten LLC

Federal Tax ID Number (If applicable): [redacted]

Action: [X] New [ ] Change [ ] Cancel

Effective Date: 03 - 25 - 21
Month Day Year

Name of Financial Institution: Chase Bank

Routing Number (The first two numbers must be 01 through 12 or 21 through 32): [redacted]

Type of Account: [ ] Pers Checking [ ] Pers Savings [ ] Bus Checking [X] Bus Checking

Account Number: [redacted]

Ownership of Account: [ ] Self [ ] Joint [X] Other

By signing this agreement, I authorize ACM to initiate credit entries to the account indicated above for the purpose of expense and/or rent. I also authorize ACM to initiate, if necessary, debit entries and adjustments for any credit entries made in error.

Signature [signature] Date 3-26-21

*If the account is a joint account or in someone else's name, that individual must also agree to the terms stated above by signing below.*

Signature ______________________ Date ______________

1. Fill in all boxes above.
2. Sign and date the form.

TIP Call your financial institution to make sure they will accept direct deposits.

TIP Verify your account number and routing transit number with your financial institution.

TIP Do not use a deposit slip to verify the routing number.

Routing Transit Number

Account Number

JOHN PUBLIC
123 Main Street
Your Town, FL 12345

1234

20

PAY TO THE ORDER OF $

Your Town Bank
Your Town, FL 12345

DOLLARS

For

⑆250000005⑆: ⑆234556789022⑈

NOTE: THE ACCOUNT AND ROUTING NUMBER MAY APPEAR IN DIFFERENT PLACES ON YOUR CHECK.

Form **W-9**
(Rev. October 2018)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer Identification Number and Certification

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information.

Give Form to the requester. Do not send to the IRS.

Print or type. See Specific Instructions on page 3.

1 Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.
Katherine Diane Grant

2 Business name/disregarded entity name, if different from above
Karmann Kash LLC

3 Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only one of the following seven boxes.

☒ Individual/sole proprietor or single-member LLC ☐ C Corporation ☐ S Corporation ☐ Partnership ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ ______

**Note:** Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is **not** disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

4 Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) ______

Exemption from FATCA reporting code (if any) ______

*(Applies to accounts maintained outside the U.S.)*

5 Address (number, street, and apt. or suite no.) See instructions.
326 Main Street

Requester's name and address (optional)

6 City, state, and ZIP code
Sterling CO 80751

7 List account number(s) here (optional)

## Part I Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN,* later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

Social security number
[ ][ ][ ] – [ ][ ] – [ ][ ][ ][ ]

or

Employer identification number
[redacted]

## Part II Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here** Signature of U.S. person ▶ [signature] Date ▶ 3-26-2021

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9.*

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

- Form 1099-INT (interest earned or paid)
- Form 1099-DIV (dividends, including those from stocks or mutual funds)
- Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
- Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
- Form 1099-S (proceeds from real estate transactions)
- Form 1099-K (merchant card and third party network transactions)
- Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
- Form 1099-C (canceled debt)
- Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See* What is backup withholding, *later.*

Form **W-9**
(Rev. October 2018)
Department of the Treasury
Internal Revenue Service

# Request for Taxpayer Identification Number and Certification

▶ Go to *www.irs.gov/FormW9* for instructions and the latest information.

**Give Form to the requester. Do not send to the IRS.**

Print or type. See Specific Instructions on page 3.

1 Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.
Katherine Grant

2 Business name/disregarded entity name, if different from above
Karmann Kasten LLC

3 Check appropriate box for federal tax classification of the person whose name is entered on line 1. Check only one of the following seven boxes.

☒ Individual/sole proprietor or single-member LLC ☐ C Corporation ☐ S Corporation ☐ Partnership ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=Partnership) ▶ ______

**Note:** Check the appropriate box in the line above for the tax classification of the single-member owner. Do not check LLC if the LLC is classified as a single-member LLC that is disregarded from the owner unless the owner of the LLC is another LLC that is not disregarded from the owner for U.S. federal tax purposes. Otherwise, a single-member LLC that is disregarded from the owner should check the appropriate box for the tax classification of its owner.

☐ Other (see instructions) ▶

4 Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any) ______

Exemption from FATCA reporting code (if any) ______

(Applies to accounts maintained outside the U.S.)

5 Address (number, street, and apt. or suite no.) See instructions.
326 Main Street

Requester's name and address (optional)

6 City, state, and ZIP code
Sterling CO 80751

7 List account number(s) here (optional)

## Part I Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the instructions for Part I, later. For other entities, it is your employer identification number (EIN). If you do not have a number, see *How to get a TIN,* later.

**Note:** If the account is in more than one name, see the instructions for line 1. Also see *What Name and Number To Give the Requester* for guidelines on whose number to enter.

Social security number
[ ][ ][ ] - [ ][ ] - [ ][ ][ ][ ]

or

Employer identification number
[redacted]

## Part II Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and
3. I am a U.S. citizen or other U.S. person (defined below); and
4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions for Part II, later.

**Sign Here** Signature of U.S. person ▶ /k Gr Date ▶ 4-1-21

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

**Future developments.** For the latest information about developments related to Form W-9 and its instructions, such as legislation enacted after they were published, go to *www.irs.gov/FormW9.*

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following.

- Form 1099-INT (interest earned or paid)
- Form 1099-DIV (dividends, including those from stocks or mutual funds)
- Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)
- Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)
- Form 1099-S (proceeds from real estate transactions)
- Form 1099-K (merchant card and third party network transactions)
- Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)
- Form 1099-C (canceled debt)
- Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

*If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding.* See What is backup withholding, later.